UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES E. BONNER, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>HOMELESS SERVICES CENTER,<br><br>        Defendant. | Case No. 15-cv-04205-PSG<br><br>**ORDER GRANTING-IN-PART MOTION FOR PARTIAL DISMISSAL**<br><br>**(Re: Docket No. 10)** |

        Plaintiffs Charles Bonner and Torriano Walker allege that their former employer, Defendant Homeless Services Center, allowed its clients to subject Plaintiffs to repeated racial harassment and violence.[1] HSC moves to dismiss much—but not all—of Plaintiffs' complaint on the grounds that Walker released his claims in a severance agreement and several of Bonner's causes of action fail as a matter of law.[2] The motion is GRANTED, but only in limited part, as set forth below.

**I.**

        During the period that Plaintiffs worked at HSC, the center provided a number of day services to homeless people at HSC's campus in Santa Cruz.[3] The center's services were very popular; on some days, over 500 clients took advantage of them.[4] However, violence and criminal

---

[1] *See* Docket No. 1.

[2] *See* Docket No. 10.

[3] *See* Docket No. 1 at ¶ 16.

[4] *See id.*

1
Case No. 15-cv-04205-PSG
ORDER GRANTING-IN-PART MOTION FOR PARTIAL DISMISSAL

activity, and especially drug abuse, were common at HSC.[5] From 2012 to 2013, Santa Cruz Police were called to the HSC campus over 700 times, and in February 2014 two separate stabbings occurred near there.[6] Although HSC retained the right to refuse services to clients or bar them from the premises, and despite an official zero tolerance policy towards harassment, senior staff members at HSC rarely enforced bans against individual clients, and there was no fence around the campus until at least January 2014.[7]

Bonner, who is African American, started working at HSC as a "campus supervisor" in February 2011.[8] That title was essentially a euphemism for "security guard"; Bonner's responsibilities included enforcing HSC rules and ensuring safety on campus.[9] Nevertheless, HSC did not equip Bonner with any tools or weapons, authorize him to use any level of force or even offer any training about working with homeless clients.[10] If verbal persuasion failed, Bonner's only recourse in dealing with unruly clients was to recommend that they be banned.[11] But whenever he did so, HSC management and staff often ignored or overrode those bans, and the clients could still wander onto campus because there was no fence.[12]

Throughout Bonner's tenure at HSC, he endured constant racial harassment from clients.[13] They used racial slurs against him on a regular basis, and on several occasions they made physical

---

[5] *See id.*

[6] *See id.*

[7] *See id.* at ¶¶ 17, 28-29, 32-34.

[8] *Id.* at ¶¶ 8, 18.

[9] *See id.* at ¶ 18.

[10] *See id.* at ¶¶ 19, 24.

[11] *See id.* at ¶¶ 20, 27.

[12] *See id.* at ¶¶ 20, 27-29.

[13] *See id.* at ¶ 21.

threats and gestures towards him.[14] This conduct violated HSC's purported zero tolerance policy towards racial harassment, and HSC management saw it happen and fielded repeated complaints from Bonner.[15] Instead of acting to curtail the offensive behavior, HSC's mostly white senior staff made excuses for the clients, let banned offenders back onto campus the very next day and generally ignored the problem.[16] Finally, in March 2015, after an extreme encounter involving several racial epithets, an HSC client pulled a knife on Bonner, lunged at him and threatened to kill him and his family.[17] Emotionally, mentally and physically unable to continue at HSC, and having failed to obtain any protection against the harassment and threats, Bonner went on administrative leave and did not return.[18]

Walker, another African American man, started working at HSC in the same capacity in July of 2014.[19] He also faced regular racial abuse as well as verbal and physical threats.[20] On one occasion, a client called Walker a racial slur and then punched him in the face.[21] On another, after a racially motivated encounter, a client tried to hit Walker with a car.[22] HSC management took no action to protect Walker either.[23] In June 2015, HSC fired Walker as part of a mass layoff.[24]

---

[14] *See id.* at ¶ 22.

[15] *See id.* at ¶¶ 17, 21-22, 27-29, 32-33.

[16] *See id.* at ¶¶ 28-29, 31-34.

[17] *See id.* at ¶ 23.

[18] *See id.*

[19] *See id.* at ¶¶ 8, 25.

[20] *See id.* at ¶ 26.

[21] *See id.*

[22] *See id.*

[23] *See id.* at ¶¶ 26-29, 31-34.

[24] *See id.* at ¶ 37.

3
Case No. 15-cv-04205-PSG
ORDER GRANTING-IN-PART MOTION FOR PARTIAL DISMISSAL

After exhausting their administrative remedies through the Equal Employment Opportunity Commission and the California Department of Fair Employment and Housing, Plaintiffs filed this suit in September 2015.[25] Citing the racially motivated mistreatment discussed above as well as independent labor code violations, Plaintiffs raise the following ten causes of action:  (1) racial discrimination under Title VII of the Civil Rights Act of 1964;[26] (2) hostile work environment and racial harassment under Title VII; (3) racial discrimination under California's Fair Employment and Housing Act;[27] (4) hostile work environment and harassment under FEHA;[28] (5) failure to prevent discrimination and harassment under FEHA;[29] (6) negligence; (7) violation of the Ralph Civil Rights Act;[30] (8) failure to provide meal periods; (9) failure to provide rest breaks and (10) failure to pay wages on discharge.[31]

## II.

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[32]

## III.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[33]  When a plaintiff fails to proffer "enough facts to state a claim to

---

[25] *See id.* at ¶¶ 14-15.

[26] *See* 42 U.S.C. §§ 2000e-2(a)(1).

[27] *See* Cal. Gov't Code § 12940(a).

[28] *See id.* § 12940(j).

[29] *See id.* § 12940(k).

[30] *See* Cal. Civ. Code § 51.7.

[31] *See* Docket No. 1 at ¶¶ 40-107.

[32] *See* Docket Nos. 8, 11.

[33] Fed. R. Civ. P. 8(a)(2).

4
Case No. 15-cv-04205-PSG
ORDER GRANTING-IN-PART MOTION FOR PARTIAL DISMISSAL

relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[34] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[36] Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[37]

At this stage of the case, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[38] Ordinarily, the court's review is limited to the face of the complaint, materials incorporated into the complaint by reference and matters of which the court may take judicial notice.[39] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact or unreasonable inferences.[40]

When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment."[41] However, the court must give all parties

---

[34] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[36] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[37] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[38] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[39] *See id.*

[40] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 (holding that "a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[41] Fed. R. Civ. P. 12(d).

"a reasonable opportunity to present all the material that is pertinent to the motion."[42]  "Whether to convert a Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 12(d) is at the discretion of the district court."[43]  "The central question is whether the proffered materials and additional procedures required by Rule 56 will facilitate disposition of the action or whether the court can base its decision upon the face of the pleadings."[44]

Applying the standards above to HSC's motion, the court dismisses just two of Plaintiffs' claims.

*First*, HSC moves to dismiss all of Walker's claims—or, in the alternative, moves for summary judgment in HSC's favor on those claims—because he signed a severance agreement releasing HSC from liability.  In support of this motion, HSC has submitted a copy of the agreement and a declaration from HSC's human resources manager, Danyal Herder, who handed the agreement to Walker and saw him sign it.[45]  As HSC recognizes, the court may not consider the agreement or declaration without converting the motion to dismiss into a motion for summary judgment.[46]

The court declines to do so.  Walker has submitted his own declaration, in which he describes circumstances that at least suggest that Herder could have induced him to sign the

---

[42] *Id.*

[43] *Adobe Sys. Inc. v. Blue Source Group, Inc.*, Case No. 14-cv-02147, 2015 WL 5118509, at *13 (N.D. Cal. Aug. 31, 2015) (citing *Burgess v. City & Cty. of San Francisco*, Case Nos. 91-15084, 91-15493, 1992 WL 26545, at *1 (9th Cir. Feb. 18, 1992)); *see also* 5C Wright & Miller, Federal Practice and Procedure § 1366 (3d ed. 2004) ("As the language of the rule suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings . . . and rely on it, thereby converting the motion, or to reject it or simply not consider it.").

[44] *Collins v. Palczewski*, 841 F. Supp. 333, 335 (D. Nev. 1993) (citing 5C Wright & Miller, *supra*, at § 1366).

[45] *See* Docket No. 10-1.

[46] *See* Docket No. 10 at 4-6 (citing Fed. R. Civ. P. 12(d)).

6
Case No. 15-cv-04205-PSG
ORDER GRANTING-IN-PART MOTION FOR PARTIAL DISMISSAL

agreement by fraud.[47]  The thinness of the evidence before the court—nothing more than a competing pair of declarations—underlines the fact that the parties have had no reasonable opportunity to obtain and present evidence about whether the agreement is enforceable.  Deciding such a critical issue at this early stage will not facilitate disposition of the action on its merits.  The court therefore does not consider the declarations or the separation agreement, and HSC's motion to dismiss all of Walker's claims under Rule 12(b)(6) is DENIED.

*Second*, HSC urges the court to dismiss Plaintiffs' first and third causes of action, brought under Title VII and FEHA respectively.  Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."[48]  FEHA similarly bars an employer from "discriminat[ing] against [an employee] in compensation or in terms, conditions, or privileges of employment" because of the employee's race.[49]

As HSC points out, Plaintiffs plead both of these claims in conclusory terms.  Such "[t]hreadbare recitals" of the elements of the causes of action "do not suffice" under *Iqbal*.[50]  For instance, the Title VII claim alleges only that "[HSC] treated [Plaintiffs] adversely based on their race [and] discriminated against [Plaintiffs] on the basis of their race, including imposing different terms, conditions, or privileges of employment."[51]  The FEHA claim offers no more detail, saying only that HSC "discriminated against [Plaintiffs] on the basis of their race, including imposing different terms, conditions, or privileges of employment."[52]  Precisely what conduct by HSC constituted discrimination does not appear on the face of the complaint.

---

[47] *See* Docket No. 13-2.

[48] 42 U.S.C. § 2000e-2(a)(1).

[49] Cal. Gov't Code § 12940(a).

[50] 556 U.S. at 678.

[51] Docket No. 1 at ¶ 42.

[52] *Id.* at ¶ 55.

7
Case No. 15-cv-04205-PSG
ORDER GRANTING-IN-PART MOTION FOR PARTIAL DISMISSAL

Plaintiffs direct the court to cases holding that verbal harassment is actionable under both Title VII and FEHA, but these cases discuss such harassment as a basis for finding a hostile work environment.[53] Here, Plaintiffs have raised separate hostile work environment claims under both Title VII and FEHA.[54] Their first and third causes of action are insufficiently pled and redundant, and HSC's motion to dismiss these claims is GRANTED.

*Third*, HSC challenges Plaintiffs' FEHA hostile work environment claim because the harassment was perpetrated by nonemployees. Section 12940(j)(1) of FEHA provides that neither an employer nor "any other person" may harass an employee on account of the latter's race.[55] "Harassment of an employee . . . shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."[56] Accordingly, Plaintiffs claim that HSC "knowingly allow[ed] non-employee . . . clients . . . to subject [Plaintiffs] to severe and pervasive racial slurs and epithets."[57]

Although this seems simple enough, HSC argues that a later sentence in Section 12940(j)(1)—added by a 2003 amendment—alters the analysis. In particular, the statute says that "[a]n employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees, . . . where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action."[58] Because this sentence singles out sexual harassment, HSC contends that racial harassment by nonemployees cannot subject the employer to liability.

---

[53] *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 63-67 (1986); *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 129-30 (1999).

[54] *See* Docket No. 1 at ¶¶ 46-52, 59-65.

[55] Cal. Gov't Code § 12940(j)(1).

[56] *Id.*

[57] Docket No. 1 at ¶ 61.

[58] Cal. Gov't Code § 12940(j)(1).

Both parties cite to *Carter v. California Department of Veterans Affairs*, in which the California Supreme Court analyzed the effect of this amendment.[59] The *Carter* court found that the prior version of the statute—which includes the language Plaintiffs rely on—was "ambiguously worded" as to whether it covered conduct by nonemployees.[60] In 2002, an appellate court had resolved that ambiguity in favor of the employer by holding that an employer could not be liable for a client's sexual harassment of an employee.[61] The following year, the California legislature amended the statute to expressly reject that holding.[62] The *Carter* court ultimately concluded that the amendment "merely clarified existing law," so that "the true meaning of the statute remain[ed] the same" after the amendment.[63]

*Carter* suggests that Section 12940(j)(1) does cover racial harassment by nonemployees. Before the 2003 amendment, whether that provision covered harassment of any kind by nonemployees might have been ambiguous. However, the legislature and *Carter* explicitly clarified that sexual harassment by nonemployees was actionable—and, more importantly, that it always had been.[64] And because the remainder of the statute treats sexual harassment on equal terms with other forms, the amendment implied that racial harassment by nonemployees could

---

[59] 38 Cal. 4th 914 (2006).

[60] *Id.* at 926.

[61] *See id.* at 919-20 (citing *Salazar v. Diversified Paratransit, Inc.*, 126 Cal. Rptr. 2d 475, 479-89 (Ct. App. 2002), *rev'd*, 79 P.3d 1199 (Cal. 2003)).

[62] *See id.* at 921 (quoting 2003 Cal. Stat. ch. 671, § 2) ("It is the intent of the Legislature in enacting this act to construe and clarify the meaning and effect of existing law and to reject the interpretation given to the law in *Salazar v. Diversified Paratransit, Inc.*").

[63] *Id.* at 930 (quoting *W. Sec. Bank v. Superior Court*, 15 Cal. 4th 232, 243 (1997)).

[64] *See id.* ("Any ambiguity that existed in the language and legislative history of [Section 12940(j)(1)], when combined with the Legislature's prompt and clear response to an appellate court's contrary interpretation of the statute and the Legislature's statement . . . that the 2003 amendment was intended to clarify existing law, leads us to conclude that the Legislature merely clarified existing law when it amended [Section 12940(j)(1)] to refer specifically to acts of nonemployees.").

9
Case No. 15-cv-04205-PSG
ORDER GRANTING-IN-PART MOTION FOR PARTIAL DISMISSAL

give rise to employer liability too.  Although Title VII cases do not control the interpretation of FEHA, federal decisions finding employer liability in such situations "bolster [this] conclusion."[65]  Plaintiffs' hostile work environment cause of action under FEHA can proceed.[66]

## IV.

HSC's motion to dismiss is GRANTED-IN-PART, only as to Plaintiffs' first and third causes of action.  Dismissal without leave to amend is only appropriate if it is clear that the complaint could not be saved by amendment such as after a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."[67]  Because Plaintiffs have not yet had the opportunity to address the defects in their claims, leave to amend also is GRANTED.  Plaintiffs shall file any amended complaint within 14 days.

**SO ORDERED.**

Dated: January 7, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[65] *Id.* at 930 n.8 (citing *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997)); *see Galdamez v. Potter*, 415 F.3d 1015, 1022 & n.5 (9th Cir. 2005) (holding that an employer can be liable for racial harassment by third parties if the employer "ratifies or condones the conduct by failing to investigate and remedy it"); *see also Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 422-23 (4th Cir. 2014) (same).

[66] HSC also challenges Plaintiffs' claim under FEHA for failure to prevent a hostile work environment on the grounds that there can be no claim for failure to protect against harassment when there is no actionable harassment.  Because Plaintiffs have stated a viable hostile work environment claim under FEHA, they also may pursue their claim for failure to correct.

[67] *Eminence Capital*, 316 F.3d at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

10
Case No. 15-cv-04205-PSG
ORDER GRANTING-IN-PART MOTION FOR PARTIAL DISMISSAL